# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | No. 3:15-cr-00088 |
| | ) | CHIEF JUDGE CRENSHAW |
| [1] REGINALD JOHNSON, III | ) | |
| [2] AWEIS HAJI-MOHAMED | ) | |
| [3] MARQUIS BRANDON | ) | |
| [6] SANTEZ BRADFORD | ) | |

## MEMORANDUM

Pending before the Court is Defendant Marquis Brandon's Motion to Strike (Doc. No. 196) in which Defendants Aweis Haji-Mohamed, Reginald Johnson, III, and Santez Bradford have filed Motions to Join (Doc. Nos. 207, 212 & 230). The Government has filed a consolidated response. (Doc. No. 248). For the reasons that follow, the Motion to Strike will be granted in part and denied in part.

### I. Defendants' Positions

Defendants move to strike language from Counts Thirteen through Fifteen, and Eighteen and Nineteen of the Second Superseding Indictment. More specifically, all four Defendants seek to strike the italicized language from Count 13, which reads as follows:

> Between on or about January 22, 2015 and on or about September 11, 2015, in the Middle District of Tennessee, [l] REGINALD JOHNSON, III, a/k/a CHEEFA, [2] AWEIS HAJI-MOHAMED a/k/a SON SON, and [3] MARQUIS BRANDON a/k/a DUMMY, each having previously been convicted in any court of a crime punishable by imprisonment for a term exceeding one year, did knowingly possess, in and affecting commerce, a firearm, to wit: a Springfield XD, .40 caliber semi-automatic pistol, *which [2] AWEIS HAJI-MOHAMED a/k/a SON SON, aided and abetted by [1] REGINALD JOHNSON, III, a/k/a CHEEFA, and [3]MARQUIS BRANDON a/k/a DUMMY, used to shoot and kill Isaiah Starks a/k/a Blue on or about February 9, 2015*, and which [1] REGINALD JOHNSON, III, a/k/a CHEEFA and [3] MARQUIS BRANDON a/k/a DUMMY used around the end of February, 2015 *to regain*

1

> *possession of a Glock, Model 23, .40 caliber semi-automatic pistol that [1] REGINALD JOHNSON, III, a/k/a CHEEFA had previously sold to another person.*
>
> In violation of Title 18, United States Code, Sections 922(g)(1), 924, and 2.

(Doc. No. 67, Second Superseding Indictment Count Thirteen) (emphasis added). Haji-Mohamed also asserts that the inclusion of the language about the murder of Starks is "highly prejudicial" and "contrary to Federal Rules of Evidence 402, 403 and 404(b)." (Doc. No. 212 at 1).

Brandon, joined by Bradford, seeks to remove the following italicized language from Count Fourteen:

> Between on or about January 22, 2015 and on or about January 31, 2015, in the Middle District of Tennessee, [6] SANTEZ BRADFORD a/k/a WACCO and [3] MARQUIS BRANDON a/k/a DUMMY did steal a firearm, that is a Masterpiece Arms, Model MPA930, 9mm MAC-11 style semi-automatic pistol, which had moved in interstate commerce, *from a fellow member of the Five Deuce Hoover Crips street gang in or around North Nashville during an incident in which they also took controlled substances, cash, and personal property from that victim.*
>
> In violation of Title 18, United States Code, Sections 924(1) and 2.

(Superseding Indictment Count Fourteen) (emphasis added).

Those same two Defendants move to strike the following italicized language from Count Fifteen:

> Between on or about January 22, 2015, through on or about January 31, 2015, in the Middle District of Tennessee, [6] SANTEZ BRADFORD a/k/a WACCO and [3] MARQUIS BRANDON a/k/a DUMMY knowingly possessed and stored a stolen firearm, to-wit: a Masterpiece Arms, Model MPA930, 9mm MAC-11 style semi-automatic pistol, which had been shipped or transported in interstate commerce, knowing and having reasonable cause to believe that the firearm was stolen, and that had been taken by the defendants *from a fellow member of the Five Deuce Hoover Crips in or around North Nashville.*
>
> In violation of Title 18, United States Code, Sections 922(j), 924, and 2.

(Id., Count Fifteen) (emphasis added).

Finally, and without any further explanation, Bradford moves to strike the "used to intimidate and threaten JH" language from both Counts Eighteen and Nineteen. Those Counts are virtually identical, with the former charging Bradford with being a felon in possession of a firearm, and the latter charging him with possessing the same gun knowing, or having reasonable cause to believe, it was stolen. Count Eighteen reads:

> Between on or about February 15, 2015 and on or about February 18, 2015, in the Middle District of Tennessee, [6] SANTEZ BRADFORD a/k/a WACCO, having previously been convicted in any court of a crime punishable by imprisonment for a term exceeding one year, did knowingly possess, in and affecting commerce, a firearm, to wit: a Glock, Model 23, .40 caliber semi-automatic pistol, which [6] SANTEZ BRADFORD a/k/a WACCO *used to intimidate and threaten JH* on or about February 18, 2015.
>
> In violation of Title 18, United States Code, Sections 922(g)(1), 924, and 2.

(Id., Count Eighteen) (emphasis added).

## II. Standard of Review

Pursuant to Rule 7(d), "[u]pon the defendant's motion, the court may strike surplusage from the indictment[.]" Fed. R. Crim. P. 7(d). The rule "serves to 'protect the defendant against immaterial or irrelevant allegations in an indictment, . . . which may . . . be prejudicial.'" United States v. Berroa, 2017 WL 1755511, at *8 (1st Cir. May 5, 2017) (quoting United States v. Lewis, 40 F.3d 1325, 1346 (1st Cir. 1994)). "'A redaction of an indictment is permissible so long as the elements of the offense charged are fully and clearly set out in what remains.'" United States v. Green, 842 F.3d 1299, 1309 (11th Cir. 2016) (quoting United States v. Adkinson, 135 F.3d 1363, 1376 (11th Cir. 1998)).

"The decision whether to strike language from an indictment rests within the sound discretion of the district court." United States v. Emuegbunam, 268 F.3d 377, 394 (6th Cir. 2001);

3

accord United States v. Williams, 158 F. App'x 651, 654 (6th Cir. 2005); United States v. Kemper, 503 F.2d 327, 329 (6th Cir.1974). Such a motion should be granted only where it is clear that the allegations contained in the Indictment are not relevant to the charge made or contain inflammatory and prejudicial matter. United States v. O'Connor, 656 F.3d 630, 645 (6th Cir. 2011); United States v. Brye, 318 F. App'x 878, 880 (11th Cir. 2009); United States v. DeRosier, 501 F.3d 888, 897 (8th Cir.2007). However, and as the Government is quick to point out, the Sixth Circuit "has noted that 'if the language in the indictment is information which the government hopes to properly prove at trial, it cannot be considered surplusage no matter how prejudicial it may be (provided, of course, it is legally relevant).'" United States v. Moss, 9 F.3d 543, 550 (6th Cir. 1993) (quoting United States v. Thomas, 875 F.2d 559, 562 n.2 (6th Cir. 1989)).

### III. **Application of Law**

Brandon cites United States v. Narciso, 446 F. Supp. 252 (E.D. Mich. 1977) for the proposition that "[a] defendant cannot be tried for acts that were not found by the grand jury." (Doc. No. 196 at 6). While that is true, the Supreme Court has observed that "[a]s long as the crime and the elements of the offense that sustain the conviction are fully and clearly set out in the indictment, the right to a grand jury is not normally violated by the fact that the indictment alleges more crimes or other means of committing the same crime." United States v. Miller, 471 U.S. 130, 136 (1985). Recognizing as much, acknowledging that "[a] motion to strike surplusage should be granted only where it is clear that the language is irrelevant and prejudicial," United States v. Neller, 229 F.3d 1154 (6th Cir. 2000), and having thoroughly considered the arguments of the parties, this Court's only real concern is with the allegation in Count Thirteen that the Springfield XD, .40 caliber semi-automatic pistol was used to shoot and kill Isaiah Starks on February 9, 2015.

4

The second challenged allegation in Count Thirteen, *viz.*, that the Springfield pistol was used to regain possession of a Glock, Model 23, .40 caliber semi-automatic pistol, appears to play into the Government's overall theory that a handful of guns made rounds among the Defendants. In fact, after Starks was killed, a Glock, Model 23, .40 caliber semi-automatic pistol was allegedly used by Bradford "to intimidate and threaten JH" sometime between February 14 and 18, 2015 (Counts Eighteen and Nineteen), and was alleged to be in the hands of Johnson on or around May 14, 2015 (Counts Twenty-Five and Twenty-Six).

The allegations about gang membership (Counts Fourteen and Fifteen) and the taking of controlled substances and property from a gang member need not be stricken as irrelevant or prejudicial because the Government asserts the proof will show that (1) both Bradford and Brandon were members of the Five Deuce Hoover Crips at the times alleged in the Indictment, and (2) their membership in that gang provided them with access to the Model MPA930, 9mm caliber MAC-11 style pistol. (Doc. No. 248 at 4-5). While "gang affiliation evidence 'is inadmissible if there is no connection between the gang evidence and the charged offense,'" evidence of "gang affiliation is relevant where it demonstrates the relationship between people and that relationship is an issue in the case[.]" United States v. Ford, 761 F.3d 641, 649-50 (6th Cir. 2014) (quoting Anderson, 333 Fed. App'x at 24). Moreover, "'evidence of gang affiliation is admissible to establish the defendant's opportunity to commit a crime[.]'" United States v. Anderson, 333 F. App'x 17, 24 (6th Cir. 2009) (quoting, United States v. Jobson, 102 F.3d 214, 221 (6th Cir.1996)).

Nor does the Court believe it necessary to strike the "intimidate and threaten language" from Counts Eighteen and Nineteen. The Government argues that "[p]roof that Bradford possessed a pistol for the purpose of intimidating another individual is probative of the defendant's possession

5

of the firearm, establishes the defendant's opportunity to possess the firearm, is relevant, and is more probative than prejudicial." (Doc. No. 248 at 6-7). Although "intimidate and threaten" are not elements of either a felon in possession charge under 18 U.S.C. § 922(g)(1) (Count Eighteen), or the possession of a stolen firearm charge under 18 U.S.C. § 922(j) (Count Nineteen), "'[r]elevant evidence is not confined to that which directly establishes an element of the crime'" and "'evidence that adds context and dimension to the government's proof of the charges can have that tendency.'" United States v. Mangual-Santiago, 562 F.3d 411, 427 (1st Cir. 2009) (citation omitted); accord United States v. Gonzalez, 110 F.3d 936, 941 (2d Cir.1997)). Indeed, "[t]he mere fact that information in an indictment does not constitute an element of the charged offense does not require that it be stricken." United States v. Solomon, 273 F.3d 1108 (5th Cir. 2001) (citing United States v. Scarpa, 913 F.2d 993, 1013 (2d Cir.1990)).

Furthermore, the charges in the Second Superseding Indictment are wide-ranging. They encompass crimes ranging from gun possession, to drug distribution, to Hobbes Act robberies. Given the breadth of the charging document, the language that a gun was used to threaten and intimidate is not overly prejudicial. See United States v. Baez, 349 F.3d 90, 94 (2d Cir. 2003) (finding no abuse of discretion in admitting evidence of uncharged act where it did not involve conduct more inflammatory than the charged crime).

Throwing an uncharged murder into the mix, however, adds a whole new level of prejudice, which can only serve to inflame the passions and/or prejudices of the jury. Count Thirteen alleges that Johnson, Haji-Mohammed and Brandon, being previously convicted of a felony, unlawfully possessed a semi-automatic pistol in violation of 18 U.S.C. § 922(g)(1). "To obtain a conviction under § 922(g)(1), the government must prove that 'the defendant had a previous felony

6

conviction,' that 'the defendant knowingly possessed the firearm specified in the indictment,'" and that "'the firearm traveled in or affected interstate commerce.'" United States v. Morrison, 594 F.3d 543, 545 (6th Cir. 2010) (quoting United States v. Grubbs, 506 F.3d 434, 438 (6th Cir.2007)). Homicide, obviously, is not an essential element 18 U.S.C. § 922(g)(1), a point that is underscored by the fact that when Defendants were initially charged with this crime there was no mention of Starks' murder. To the contrary, the charging allegation was simple and straightforward:

> On or about February 9, 2015, in the Middle District of Tennessee, [1] **REGINALD JOHNSON, III, a/k/a CHEEFA,** [2] **AWEIS HAJI-MOHAMED a/k/a SON SON,** and [3]MARQUIS BRANDON a/k/a DUMMY, each having previously been convicted in any court of a crime punishable by imprisonment for a term exceeding one year, did knowingly possess, in and affecting commerce, a firearm, to wit: a Springfield XD, .40 caliber semi-automatic firearm.
>
> In violation of Title 18, United States Code, Sections 922(g)(1), 924, and 2.

(Doc. No. 46, Superseding Indictment Count Four).

Much as with the intimidated and threatened language, the Government insists that proof "that a defendant participated in the murder of a person by use of a firearm demonstrates possession of the firearm." (Doc. No. 248 at 3). It also argues that "[s]uch proof also demonstrates the weapons was operable, therefore presentencing [sic] satisfactory proof to establish the weapon was a 'firearm' as defined in 18 U.S.C. § 921(a)(3)." Id.

Support for the Government's position can be found in United States v. Williams, 445 F.3d 724 (4th Cir. 2006). There, the Fourth Circuit concluded that the district court did not incorrectly strike the Rule 403 balance when it admitted an uncharged murder in a felon in possession case, nor did it "act[] irrationally or arbitrarily when determining that the probative value of the [uncharged murder] evidence was not substantially outweighed by the danger of unfair prejudice." Id. at 732.

The Fourth Circuit also noted that, in light of the conclusion that evidence of the uncharged

7

murder was not unfairly prejudicial, it "fail[ed] to see how [defendant] could have been prejudiced by the inclusion of those allegations in the indictment, particularly since the indictment was not given to the jury and the district court specifically instructed the jury that the indictment was not evidence." Id. at 734. Tellingly, however, the Fourth Circuit also observed that "the weighing of the evidence and balancing of the Rule 403 scale . . . is a discretionary task vested with the district court," and "a district court's decision to admit evidence . . . will not be overturned 'except under the most extraordinary of circumstances, where that discretion has been plainly abused.'" Id. at 732 (quoting United States v. Simpson, 910 F.2d 154, 157 (4th Cir.1990)).

Respectfully, this Court disagrees with how the trial court in Williams chose to exercise is discretion, particularly in a case such as this one where the charge does not involve allegations of conspiracy or racketeering. See United States v. Lopez, 572 F. App'x 1, 3 (2d Cir. 2014) (affirming the district court's decision to allow evidence of the uncharged murder as direct evidence of the existence of a conspiracy); United States v. Castro, 411 F. App'x 415, 420 (2d Cir. 2011) (where defendant disputed that MS-13 was a racketeering enterprise, evidence of uncharged homicides was "essential to the Government's efforts to show that the gang engaged in acts and threats of murder"). As the Fourth Circuit in Williams itself conceded, "evidence of an uncharged murder certainly carries with it some risk that it will incite the emotions of the jury." Williams, 445 F.3d at 733. The Court believes that there is more than "some risk" this will occur.

"Uncharged murder evidence is highly prejudicial for obvious reasons," United States v. Kassir, 2009 WL 976821, at *7 (S.D.N.Y. Apr. 9, 2009) (collecting cases), and "admitting evidence of uncharged murder raises serious concerns," United States v. Gotti, 399 F. Supp.2d 417, 420 (S.D.N.Y.2005). "Nonetheless, the danger that uncharged murder evidence will unfairly prejudice

8

the defendant does not necessarily outweigh the evidence's probative value," especially "[w]here the uncharged murder evidence is no more serious than the charged conduct." Kassir, 2009 WL 976821, at *7 (collecting cases) .

"In weighing the probative value of an uncharged murder, courts should consider whether its value 'is undercut by the availability of other, less prejudicial evidence that makes the same point.'" Id. (quoting Gotti, 399 F. Supp.2d at 419). Here, and in light of the fact that Starks cannot testify, the Government must have some other way to prove that the Defendants possessed the firearm, and that the firearm was operable, which are the elements the Government claims Starks' killing is intended to show.

To be sure, "violence is inherent to the charges defendant[s] face," but, even so, "evidence of an uncharged murder is highly prejudicial," United States v. Khan, 591 F. Supp. 2d 202, 206 (E.D.N.Y. 2008), which can only serve to inflame the jury. Indeed, "[o]ur society reserves its severest condemnation for murderers" and "it is hard to fathom anything more prejudicial than the unproved assertion that the accused is also guilty of the uncharged crime of murder while he is on trial for another offense." United States v. Wilson, 135 F.3d 291, 299 (4th Cir. 1998). To prevent undue and seemingly unnecessary prejudice, and because, unlike in Williams, the practice in this District is to read the Indictment to the jury and provide them with a copy, the Court will exercise its discretion to redact the language referencing the Starks' murder from Count Thirteen of the Second Superseding Indictment.

### IV. Conclusion

On the basis of the foregoing, Brandon's Motion to Strike will be granted solely with respect to the allegation surrounding the murder of Isaiah Starks in Count Thirteen of the Superseding

9

Indictment. The remaining Defendants' Motions to Join will be granted.

An appropriate Order will enter.

_____
WAVERLY D. CRENSHAW, JR.
CHIEF UNITED STATES DISTRICT JUDGE