UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| UNITED STATES OF AMERICA | ) | |
|---|---|---|
| | ) | |
| v. | ) | No. 3:15-00088 |
| | ) | **CHIEF JUDGE CRENSHAW** |
| [1] REGINALD JOHNSON, III | ) | |
| [2] AWEIS HAJI-MOHAMED | ) | |
| [3] MARQUIS BRANDON | ) | |
| [5] CHARLES BRADEN | ) | |
| [6] SANTEZ BRADFORD | ) | |

## AMENDED MEMORANDUM

Pending before the Court are Motions to Sever filed by Defendants Marquis Brandon (Doc. 168), Reginald Johnson, III, (Doc. No. 169), Santez Bradford (Doc. No. 172), Aweis Haji-Mohamed (Doc. No. 210), and an Amended Motion to Sever filed by Defendant Charles Braden (Doc. No. 159). The Government has responded in opposition to all of the Motions (Doc. Nos. 191, 278). For the reasons that follow, the Court will sever the counts in which Johnson and Bradford are named as the sole Defendants in the Second Superseding Indictment and try those counts separately.

### I. Factual Background

On June 27, 2016, a federal grand jury returned the Second Superseding Indictment containing thirty-one counts naming six defendants. Thereafter, Defendant Keno Lane, who was named as the sole defendant in Counts Twenty-Eight through Thirty-One, pled guilty leaving twenty-seven Counts against five Defendants. Each of those Defendants has filed a Motion to Sever counts and/or defendants.

The remaining charges involve Hobbs Act robberies, possession of firearms by unlawful drug users and/or convicted felons, possession of ammunition by a convicted felon in possession of

1

controlled substances, the transfer of a firearm, and the possession of a stolen firearm. A central component of the Indictment is the use and possession by Defendants of seven firearms: (1) a Ruger P94, .40 caliber pistol; (2) a Beretta, Model 90Two, 9mm caliber pistol, (3) a SCCY, 9mm caliber pistol; (4) a Springfield XD, .40 caliber pistol; (5) a Glock, Model 23, .40 caliber pistol; (6) a Masterpiece Arms, Model MPA930, 9mm caliber MAC-11 style pistol; and (7) a Starfire, Model 30MI, 9mm caliber pistol. The first six of these firearms were allegedly exchanged between several of the Defendants.

Turning to the specifics and what the Government claims it intends to prove, Counts One through Seven apparently all involved the use of the Ruger and/or Beretta in January 2015 and for six of the seven counts, specifically on January 10, 2015. Count One charges Braden, being an unlawful user of a controlled substance, with possessing that handgun in January 2015. He, along with Haji-Mohamed are charged in the next four counts for crimes committed on January 10, 2015: Count Two alleges that they conspired to rob and extort "CS," a person they believed to be a drug dealer; Count Three alleges they knowingly used, carried, brandished and discharged a firearm during the robbery of "CS"; Count Four alleges they conspired to rob and extort Isaiah Starks, another person they believed to be a drug dealer; and Count Five alleges that they carried, brandished and discharged a firearm in relation to the Starks' robbery on January 10, 2015.

Braden is charged in Count Six, with the allegedly transferring the Ruger pistol, also on January 10, 2015, knowing it would be used in the Starks' robbery. Count Seven charges Haji-Mohamed with possession of the Ruger by a convicted felon on January 10, 2015, as well as possessing the Beretta pistol, which the Government suggests the proof will show was also involved in Counts Two and Three.

Counts Eight through Twelve are leveled against Haji-Mohamed and Brandon for crimes alleged to have occurred, at least in part, on January 22, 2015. Count Eight alleges they conspired and threatened physical violence in furtherance of a plan to rob a Cricket Wireless store; Count Nine alleges they used, carried, and brandished firearms during the conspiracy to rob that store; Count Ten alleges that both, having previously been convicted of felony offenses, possessed the SCCY pistol; Count Eleven alleges that they stole the Springfield XD pistol from an employee at the Cricket store; and Count Twelve alleges those Defendants possessed, stored, and disposed of the stolen Springfield pistol between January 22, 2015 through September 11, 2015.

Count Thirteen is another felon in possession charge. It charges Johnson, Haji-Mohamed, and Brandon with possessing the Springfield XD pistol and using it on February 9, 2015 to shoot and kill Starks and using it again toward the end of the month to regain possession of the Glock, which Johnson had previously sold to another person.

The next two Counts involve the Masterpiece Arms pistol and are against Bradford and Brandon. Count Fourteen charges that they stole the firearm from a fellow member of Five Deuce Hoover Crips, while Count Fifteen alleges they possessed and stored that firearm. Both counts are alleged to have occurred at some point between January 22 and January 31, 2015.

The Masterpiece Arms and two other pistols are involved in Counts Sixteen and Seventeen. In Count Sixteen, Bradford, a convicted felon, is alleged to have possessed the Beretta, Springfield XD and Masterpiece Arms pistols between January 3 and January 31, 2015, while Count Seventeen charges Brandon, who is also a convicted felon, with possessing the Beretta and Masterpiece Arms pistols during the same time period.

The next two counts involve crimes that occurred between February 15 and 18, 2015, that

3

name Bradford, and involved the Glock. Bradford allegedly possessed and used that gun to intimidate and threaten "JH" (Count Eighteen), while knowing that it had been stolen (Count Nineteen).

Counts Twenty through Twenty-Two are also directed solely at Bradford and involve crimes committed on February 19, 2015. On that date, he is alleged to have unlawfully possessed the SCCY pistol (Count Twenty), to have possessed with intent to distribute cocaine (Count Twenty-One), and to have possessed a firearm while distributing the cocaine (Count Twenty-Two).

Counts Twenty-Four and Twenty-Five are also gun and drug trafficking charges. Count Twenty-Four charges Johnson with knowingly possessing with intent to distribute a Schedule I controlled substance analogue within 1,000 feet of a public housing complex on May 14, 2015, while the next count charges him with possessing the Glock in relation to that drug trafficking crime.

Finally, Counts Twenty-Three and Twenty-Six are felon-in-possession charges against Johnson. In Count Twenty-Three he is alleged to have possessed DRT (Dynamic Research Technologies).45 caliber ammunition on March 20, 2015, while in Count Twenty-Six he is alleged to have possessed the Glock between that date and May 143, 2015.

## II. **Parties' Positions**

Defendants' positions regarding severance cover the waterfront:

Braden "requests severance of Counts 1-7 of the Second Superseding Indictment" and asks for "a separate trial from all other defendants[.]" (Doc. No. 159 at 1).

Brandon argues that "the charges credited to [him], Haji-Mohamed and Bradford in Counts 8 through 17 are unrelated to the offenses levied against the other defendants in the indictment," and therefore those counts should be severed. (Doc. No. 168 at 3).

Johnson requests "an Order severing: (1) Count Twenty-Three (possession of ammunition); (2) Count Twenty-Four (Possession with intent in school/public

4

housing zone); (3) Count Twenty-Five (Possession of Firearm in furtherance of drug trafficking); and Count Twenty-Six, (Possession of a Firearm) from the other counts of the indictment so that counts 23, 24, 25 and 26 against Reginald Johnson may be tried together apart from the remaining indictment and defendants." (Doc. No. 169 at 1).

Bradford asks the Court to sever "Counts 14-16 and 18-22 from all remaining counts and Defendants in the second superceding [sic] indictment and requests a separate trial on these counts from the other Defendants." (Doc. No. 172 at 1).

Haji-Mohamed requests that Count Fourteen through Twenty Six be severed because "[t]here is no a single conspiracy linking counts 14-26 with Mr. Mohamed nor did he participate in the acts charged in those counts." (Doc. No. 210 at 2).

The Government, being the author of the charging instrument, insists that the joinder of the Defendants and Counts was proper. It argues that no severance is warranted because "the charges in the Indictment are comingled for the most apart" and there is "no reason to believe that reasonable jurors will not be capable of compartmentalizing the evidence as it relates to any defendant." (Doc. No. 191 at 10).

### III. Legal Analysis

Rule 8(a) of the Federal Rules of Criminal Procedure governs whether multiple offenses may be joined in a single indictment by providing:

> The indictment or information may charge a defendant in separate counts with 2 or more offenses if the offenses charged—whether felonies or misdemeanors or both—are of the same or similar character, or are based on the same act or transaction, or are connected with or constitute parts of a common scheme or plan.

Fed. R. Crim. P. 8(a). "[T]he spirit of Rule 8(a) . . . is to 'promote the goals of trial convenience and judicial efficiency,'" United States v. Tran, 433 F.3d 472, 478 (6th Cir. 2006) (citation omitted), and the Sixth Circuit "construes Rule 8(a) in favor of joinder and evaluates whether joinder was appropriate based upon the four corners of the indictment." United States v. James, 496 Fed. App'x 541, 546 (6th Cir. 2012).

5

Rule 8(b), in turn, governs the joinder of defendants:

> The indictment or information may charge 2 or more defendants if they are alleged to have participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses. The defendants may be charged in one or more counts together or separately. All defendants need not be charged in each count.

Fed. R. Crim. P. 8(b). Much like Rule 8(a), the "general rule" is that persons jointly indicted should be tried together because 'there is almost always common evidence against the joined defendants that allows for the economy of a single trial.'" United States v. Lopez, 309 F.3d 966, 971 (6th Cir. 2002) (quoting United States v. Phibbs, 999 F.2d 1053, 1067 (6th Cir.1993)). Also, and as with Rule 8(a), the Court looks "to the allegations in the indictment to determine whether joinder was proper." United States v. Lewis, 363 F. App'x 382, 390 (6th Cir. 2010) (citing Schaffer v. United States, 362 U.S. 511, 513-14 (1960)).

"If the requirements of Rule 8 are not met, 'the district court has no discretion on the question of severance.'" United States v. Cody, 498 F.3d 582, 586 (6th Cir. 2007) (citation omitted). "'Severance in such a case is mandatory.'" Lewis, 363 F. App'x at 391 (quoting United States v. Hatcher, 680 F.2d 438, 441 (6th Cir.1982)).

Misjoinder is a question of law, whether it be in relation to offenses under Rule 8(a), United States v. Deitz, 577 F.3d 672, 691 (6th Cir. 2009), or defendants under Rule 8(b), United States v. Frost, 125 F.3d 346, 389 (6th Cir. 1997). The Court finds no misjoinder in the Second Superseding Indictment when considered as a whole, particularly because both Rule 8(a) and (b) are to be broadly construed in favor of initial joinder. See United States v. Thompson, 2017 WL 2130106, at *7 (6th Cir. May 16, 2017) (citation omitted) ("We have found that Rule 8(a) is meant to be construed broadly to 'promote the goals of trial convenience and judicial efficiency.'); United States v.

Moreno, 933 F.2d 362, 370 (6th Cir. 1991) (citation omitted) (stating that "Rule 8(b) 'can and should be broadly construed in favor of initial joinder,' because of the protection Rule 14 affords against unnecessarily prejudicial joinder.").

From the facts alleged on the face of the Second Superseding Indictment, there are connections between Defendants and the crimes, so as to satisfy Rule 8. Braden is linked to Haji-Mohamed (Counts 2-5) who, in turn, is linked to Braden (Count 5), Brandon (Count Eight through Thirteen), and Johnson (Count Thirteen). Brandon is linked not only to Haji-Mohamed in several counts, but also to Johnson (Count Thirteen) and Bradford (Counts Fourteen and Fifteen).

The way the guns allegedly traveled between the Defendants also suggests a connection. The Ruger was allegedly used or possessed by Braden (Counts One and Six) and Haji Mohamed (Count Seven). The Beretta was allegedly used or possessed by Haji-Mohamed (Count Seven), Bradford (Count Sixteen), and Brandon (Count Seventeen). The SCCY was allegedly used or possessed by Haji-Mohamed and Brandon (Count Ten), and by Bradford (Count Twenty). The Springfield was allegedly possessed by Haji-Mohamed and Brandon (Count Eleven), allegedly stolen by those Defendants (Count Twelve), allegedly possessed by those Defendants along with Johnson (Count Thirteen), and allegedly possessed by Bradford (Count Sixteen). The Glock was "regained" by Johnson and Brandon (Count Thirteen) and allegedly possessed by Bradford (Counts Eighteen and Nineteen) and Johnson (Counts Twenty-Five and Twenty-Six). Finally, the Masterpiece Arms was allegedly stolen by Bradford and Brandon (Count Fourteen), and allegedly possessed by those Defendants (Counts Fifteen through Seventeen).

As for the nature of the offenses, there is nothing untoward in joining robbery and gun charges, or drug and gun charges. The Indictment charges Hobbs Act robberies in violation of 18

7

U.S.C. § 1951, which "clearly has as an element the use, attempted use, or threatened use of physical force against the person or property of another as necessary to constitute a crime of violence," United States v. Gooch, 850 F.3d 285, 291-92 (6th Cir. 2017), and it requires only common sense and no citation of authority for the proposition that such threats are often accomplished via the business end of a firearm. Further, and unfortunately, guns are too often part of "'the tools of the trade' in drug transactions." United States v. Hardin, 248 F.3d 489, 499 (6th Cir. 2001) (citation omitted).

The connection between the robbery counts and drug dealing is more tenuous, but Rule 8(a) allows the joinder of offenses that are connected with or constitute part of a common scheme or plan, and presumably the Government will be able to show a connection between the guns used in other crimes and the drug trafficking crime. Besides, "the absence of evidence at trial linking two sets of charges results in misjoinder only if the indictment was drawn up in bad faith— *i.e.* where the government knew it could not prove a link between the charges at trial." Deitz, 577 F.3d at 691. There is no such allegation or evidence of bad faith at this juncture.

The conclusion that joinder of offenses and defendants was proper, however, does not end the matter. Even if the joinder of offenses and defendants accord with Rule 8, a severance may still be ordered under Rule 14, which provides:

> If the joinder of offenses or defendants in an indictment, an information, or a consolidation for trial appears to prejudice a defendant or the government, the court may order separate trials of counts, sever the defendants' trials, or provide any other relief that justice requires.

Fed. R. Crim. P. 14(a). Whether to grant a severance lies in the sound discretion of the Court, and abuse occurs only where there is a "strong showing of prejudice," that is, "that joinder would compromise a specific trial right or prevent the jury from making a reliable judgment about guilt or

innocence." Tran, 433 F.3d at 478.

Defendants' proposals for severance have some facial appeal, but are largely unworkable. For example, Braden's request to sever Count One through Seven makes some sense because he is only named in those Counts and he is alleged to have only been involved with Haji-Mohamed. However, included in those Counts are not only firearm violations, but also a Hobbs Act robbery, which are the very sorts of crimes alleged against Haji-Mohamed and Brandon in Counts Eight through Twelve. Likewise, Brandon's request to sever in Counts Eight through Seventeen makes some sense, but ignores the fact that those Counts, much like the allegations in Counts One through Seven, contain firearm and Hobbs Act robbery charges. Johnson's request to sever Counts Twenty-Three through Twenty-Six, which includes a drug dealing charge and the possession of a firearm in relation thereto, is plausible, but ignores the fact that drug and firearms crimes are also alleged in Counts Twenty and Twenty-One.

Collectively, Defendants are asking the Court to hold at least five separate trials – each trial limited to the specific charge against a particular Defendant for the obvious reason that their chances of favorable verdicts are likely higher if they are tried separately. "But it is 'well settled that defendants are not entitled to severance merely because they may have a better chance of acquittal in separate trials.'" United States v. Fields, 763 F.3d 443, 457 (6th Cir. 2014) (quoting Zafiro v. United States, 506 U.S. 534, 539 (1993)). Moreover, slicing the case into as many pieces as Defendants want would be an enormous waste of resources and run afoul of the very reasons that joint trials are preferred. See United States v. Caver, 470 F.3d 220, 238 (6th Cir. 2006) (stating that "[s]eparate trials produce additional labor for judges and juries, which results from the unnecessary repetition of evidence and trial procedures.").

Having considered all of the arguments by the parties and the Second Superseding Indictment, the Court will exercise its discretion by severing the Counts which name Bradford and Johnson individually. That is, the Court will sever Counts Sixteen, and Eighteen through Twenty-Six and try those counts together in one trial. In a separate trial, the Court will try the remainder of the Counts, that is, Counts One through Fifteen and Count Twenty-Seven, which includes the charges that link Bradford and Johnson to other Defendants. The Court chooses this course to lessen the chance for confusion that will result in a trial of five Defendants facing a variety of charges in Twenty-Seven Counts, particularly since Bradford and Johnson are the only ones alleged to have committed drug distribution charges. Further, several of the charges against those two Defendants relate to firearms possession in relation to those drug crimes. Additionally, at least with the Scheduled I controlled substance analogue charge contained in Count Twenty-Four, the parties have indicated that expert testimony will be needed, which adds an additional level of complexity.

In choosing this course, the Court recognizes that a joint trial in both cases could result in some spillover, but "[a] spillover of evidence between counts does not require severance unless there is 'substantial,' 'undue,' or 'compelling' prejudice." Thomas v. United States, 849 F.3d 669, 676 (6th Cir. 2017) (quoting Fields, 763 F.3d at 457). Moreover, "[e]ven where the risk of prejudice is high, less drastic measures, such as limiting instructions, often will suffice to cure any risk of prejudice.'" United States v. Driver, 535 F.3d 424, 427 (6th Cir. 2008) (citation omitted).

Given the nature of the charges and the way that the Counts are going to be severed, the Court believes that the jury in each case will be able to "mak[e] a reliable judgment about guilt or innocence." Zafiro, 506 U.S. at 539. The Court further believes that both juries will be able to "'properly compartmentalize the evidence as it relates to the appropriate defendants,'" Driver, 535

10

F.3d at 427 (citation omitted), and render a just verdict as to each.

## IV. Conclusion

For the foregoing reasons, the counts in the Second Superseding Indictment will be severed into two separate trials. In one trial, the Court will try Counts Sixteen, and Eighteen through Twenty-Six, which contain only charges against Bradford and Johnson. In a separate trial, the Court will try Counts One through Fifteen and Count Twenty-Seven, which includes the charges against the remaining Defendants, and charges that name Bradford and Johnson with other Defendants. With these rulings, all of the pending Motions to Sever will be denied as moot.

An appropriate Order will enter.

_____
WAVERLY D. CRENSHAW, JR.
CHIEF UNITED STATES DISTRICT JUDGE