## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF TENNESSEE
## NASHVILLE DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| **v.** | ) | **No. 3:15-cr-00088** |
| | ) | **CHIEF JUDGE CRENSHAW** |
| **[1] REGINALD JOHNSON, III** | ) | |
| **[2] AWEIS HAJI-MOHAMED** | ) | |
| **[3] MARQUIS BRANDON** | ) | |
| **[5] CHARLES BRADEN** | ) | |

## MEMORANDUM OPINION AND OMNIBUS ORDER

In anticipation of the trial set to commence with jury selection on April 2, 2018, Defendants have filed a number of Motions. As a preliminary matter, all Motions to Join in the Motions filed by Co-Defendants (Doc. Nos. 503, 509, 512) are **GRANTED.** The remaining Motions are considered roughly in the order in which they were filed.

### I. Brandon's "Motion to Not Designate the Alternate Jurors as 'Alternate Jurors'"
### (Doc. No. 475)

Brandon requests that the Court "not designate the alternate jurors in this case as 'alternate jurors' at the onset of the trial." (Doc. No. 475 at 1). Instead, "he suggests that at the end of the Court's final instructions to the jury the Court should randomly pick the alternates," under the theory that "this step will help ensure that all jurors remain attentive as they all believe they will be required to deliberate and render verdict." (Id.). While "[t]here may well be benefits to selecting a jury in this manner," United States v. Mendoza, 510 F.3d 749, 753 (7th Cir. 2007), it violates the federal rules for jury selection in a criminal case.

In pertinent part, Rule 24 of the Federal Rules of Criminal Procedure provides that "[a]lternate jurors replace jurors in the same sequence in which the alternates were selected." Fed.

1

R. Crim. P. 24(c)(2)(B).  As the Sixth Circuit reads it, this rule[1] "assumes that alternate jurors will be designated separately–and sequentially– before the trial begins."  United States v. Delgado, 350 F.3d 520, 524 (6th Cir. 2003).  A "district court's selection of alternates by random draw just prior to jury deliberations [i]s inconsistent with the rule."  Id.; see also, United States v. Seifer, 800 F.3d 328, 330 (7th Cir. 2015) ("a practice of empanelling more than 12 jurors and then randomly selecting alternates from the group . . . cannot be reconciled with Rule 24"); United States v. Brewer, 199 F.3d 1283, 1286 (11th Cir. 2000) (observing that the "district court violated the rule by using a random draw to discharge the alternate jurors, rather than simply discharging the last two jurors selected").

Accordingly, Brandon's "Motion to Not Designate the Alternate Jurors as 'Alternate Jurors'" (Doc. No. 475) is **DENIED**.  Nevertheless, and as is this Court's practice, the alternate jurors will not be informed of their status until the evidence has been presented, counsel have made closing arguments, and the jury has been instructed on the law by the Court.

## II.  Brandon's "Motion to Prevent the Government From Referring to the Defendants Collectively Unless a Common Fact Applies to Every Defendant" (Doc. No. 480)

In this Motion, Brandon

> moves this honorable Court to enter an Order preventing the Government, and/or its witnesses, from referring to the defendants collectively unless a common fact applies to every defendant. To allow such a reference would be misleading and confusing to the jury and ultimately cause undue prejudice to the accused. Therefore, the Government should be required to refer to specific defendants when presenting the proof and/or argument relevant to his case instead of being allowed to make broad sweeping allegations against the collective.

(Doc. No. 480).

---

[1]  Rule 24(c) was amended in 2002 "as part of the general restyling of the Criminal Rules," and with exceptions not relevant here, was "intended to be stylistic only[.]" Fed. R. Crim. P. 24(c), 2002 Adv. Comm. Notes.

Without any further argument, the Court finds Brandon's request to be overbroad and impossible to police, particularly given the alleged relationships between Defendants. There may be times when a collective reference to Defendants or a subset of Defendants is appropriate, even before proof is presented about certain events. To the extent generalization prove problematic, Defendants can object, at which time the Court will consider giving the jury a curative instruction, if appropriate.

Brandon's "Motion to Prevent the Government From Referring to the Defendants Collectively Unless a Common Fact Applies to Every Defendant" (Doc. No. 480) is **DENIED**.

### III. Brandon's "Motion for Disclosure of Presentence Reports of Cooperating Witnesses" (Doc. No. 489)

Brandon asks that he be allowed "access to the Presentence Investigation Reports ("PSR") of any cooperating witnesses at the trial in this case." (Doc. No. 489). No such witness is identified by Brandon because witness lists have yet to be exchanged.

"PSRs are confidential reports created by an arm of the court and designed for use by a judge in reaching a fair sentence." United States v. Pendleton, 832 F.3d 934, 940 (8th Cir. 2016). They "occupy a unique position," In re Morning Song Bird Food Litig., 831 F.3d 765, 773 (6th Cir. 2016), and "ha[ve] always been jealously guarded by the drafters of the federal rules and by the federal courts," United States v. Trevino, 89 F.3d 187, 192 (4th Cir. 1996). "The commonly invoked reasons underlying PSRs' special status are threefold: (1) the defendant's interest in privacy and in preventing the dissemination of inaccurate information, (2) law enforcement's and cooperating informants' interest in confidentiality, and (3) the sentencing court's interest in encouraging the free flow of information during the presentencing process." In re Morning Song, 831 F.3d at 773.

"Neither Brady nor the Federal Rules of Criminal Procedure mandate that *a trial court*

*produce* a copy of a presentence report concerning a government witness, prepared for the court, to the defense upon request." United States v. Sherlin, 67 F.3d 1208, 1218 (6th Cir. 1995) (emphasis added). Additionally, "presentence reports are not statement of the defendant within the meaning of Jencks," but are "reports prepared by probation officers used primarily as an aid to district courts at sentencing" and contain "the government's version of the offense," to which defendants rarely object. United States v. McGee, 408 F.3d 966, 973 (7th Cir. 2005).

Nevertheless, the production of a PSR, being a discovery matter under Fed. R. Crim. P. 16(d), is a matter of discretion for the trial court. Sherlin, 67 F.3d at 1218. In exercising that discretion, a court should first conduct an in camera examination of the PSR to see if disclosure is warranted. Pendleton, 832 F.3d at 940.

"This in camera review is not mandatory, however." United States v. Allen, 716 F.3d 98, 104 (4th Cir. 2013). "The district court need only perform the in camera examination once the defendant has 'clearly specified the information contained in the report that he expects will reveal exculpatory or impeachment evidence.'" Id. (quoting Trevino, 89 F.3d at 192). "Thus, 'as a prerequisite for an in camera review, an accused must plainly articulate how the information contained in the PSR will be both material and favorable to his defense.'" Id. He must also make "a threshold showing of a good faith belief that a co-defendant's PSR contains exculpatory evidence not available elsewhere." United States v. Molina, 356 F.3d 269, 275 (2d Cir. 2004); see United States v. Jewell, 614 F.3d 911, 921 (8th Cir. 2010) (citing Molina for the proposition that a defendant must "make a showing of a special need" for another's PSR); United States v. Happ, No. CR2-06-129(8), 2008 WL 5101214, at *9 (S.D. Ohio Nov. 25, 2008) ("If a defendant can describe what exculpatory or impeaching information he expects to find in the requested PSR, the district court is obligated to

undertake an in camera review of the PSR to determine whether it does indeed contain any such information and whether the defendant's need for that information is 'compelling.'").

At this point, Brandon does not know who the Government will call as a witness against him, and, as such, is not in a position to make any showing of the need for a cooperating witness's PSR. Nor does he know whether any such cooperating witness's PSR is in the possession of the Government. His "Motion for Disclosure of Presentence Reports of Cooperating Witnesses" (Doc. No. 489) is therefore **DENIED WITHOUT PREJUDICE.**

## IV. Braden's "Motion to Dismiss Third Superseding Indictment" (Doc. No. 491)

Braden moves to dismiss the present indictment for prosecutorial vindictiveness. To place the Motion in context, a chronology of the case is necessary.

On June 18, 2015, a three count Indictment was returned against Reginald Johnson, charging him with the distribution of a controlled substance in or near a school or public housing, and possession of a firearm and ammunition after having previously been convicted of a felony. (Doc. No. 1). Ten months later, on April 21, 2016, a Superseding Indictment was returned adding Aweis Haji-Mohamed, Marquis Brandon, and Keno Lane, and seven new counts, including possession of an analogue substance, conspiracy to commit Hobbs Act robbery, using a firearm to commit a crime of violence, possession of a stolen firearm, false declarations before a grand jury, and obstruction of justice. (Doc. No. 46). The charges were amended two months later on June 27, 2016, with the return of the Second Superseding Indictment, adding Charles Braden and Santez Bradford as defendants, and twenty-one new counts, that contained the charges already leveled, plus additional counts including conspiracy, the unlawful transfer of a firearm, theft of a firearm, and possession of a firearm in furtherance of a drug trafficking crime. (Doc. No. 67).

After the return of the Second Superseding Indictment, and given "the complexity of the case, the numerous pending motions, and the anticipated length of trial," the case was reassigned from a visiting judge to the undersigned on May 25, 2017. (Doc. No. 349). Shortly thereafter, on June 8, 2017, the Court entered a number of Orders and Memoranda (Doc. Nos. 365-373), which resolved the vast majority of pending motions. Among them was an Order that severed the case into two trials. One trial would include Counts Sixteen, and Eighteen through Twenty-Six that contained charges only against Bradford and Johnson; the other trial would include the remaining charges against all Defendants.

At a status conference on July 17, 2017, the Court set two trial dates, with the trial involving all Defendants scheduled to begin on April 3, 2018[2], and the second trial involving Johnson only[3] set to start on May 1, 2018. (Doc. Nos. 400). The Court also informed the parties that the trial dates were firm and would not be changed absent the most extraordinary of circumstances. The Court went on to advise the Government that if it intended to file any additional charges, it should do so at the earliest opportunity because the Court did not intend to continue the trial based upon a late-filed Indictment. This was confirmed in a contemporaneous Order that stated:

> If the Government intends to secure yet another Superseding Indictment from the grand jury it should do so as promptly as possible. There is no reason for delay because the Middle District presently has three grand juries impaneled. In the interim, counsel for the Government and the Defendants shall make themselves available to discuss any potential charges that may be forthcoming. On or before September 1, 2017, counsel shall meet and the Government shall provide to defense counsel additional evidence relating to such possible or anticipated charges, to the extent it can do so. If these meetings do not occur before September 1, 2017, then

---

[2] At a subsequent conference, and with the agreement of the parties, the Court confirmed the trial date, but moved jury selection back one day to April 2, 2018.

[3] Bradford entered a plea of guilt on July 5, 2017 (Doc. No. 384) and his later efforts to withdraw that plea were denied (Doc. No. 499), leaving Johnson as the sole Defendant in the second trial.

counsel for the respective Defendants shall notify the Court immediately.  Because the trial dates are firm settings, any continuance will be granted only for good cause shown, and the filing of a Superseding Indictment, unless it comes very late, will not meet that standard.

(Doc. No. 399 at 1-2).

Despite this Court's prompting and suggestion, the Government waited many months before securing another Superseding Indictment.  In fact, the controlling Third Superseding Indictment was not returned until February 28, 2018, just six days before the pretrial motion deadline, and little over a month before the first trial was set to begin.  While that Indictment adds no new Defendants, it adds eight new counts.  Specifically as it relates to Braden, the Third Superseding Indictment adds four charges: two counts of possessing a firearm while an unlawful user of a controlled substance; armed home invasion, and using a firearm in relation to a crime of violence.  Those crimes are all alleged to have occurred between January and March 2015, well within the time frame of the charges  set forth in the Superseding and Second Superseding Indictments.

The timing of the return of the Third Superseding Indictment is a bit suspect,[4] and undoubtedly adds pressure to Defendants and counsel who are preparing for trial.  This Court has expressed concerns in the past about the practice of returning Superseding Indictments on the eve

_____

[4] The Government concedes that the delay is "regrettable at this point," but insists that it was not the result of an "ulterior motive," or done for an "impermissible reason," or as part of a "nefarious plot."  (Doc. No. 516 at 9, 10).   Rather, the delay allegedly resulted from (1) a state prosecutor had retained jurisdiction over the home invasion charge; (2) counsel ruptured his ACL and damaged his meniscus at the end of October 2017, requiring surgery in mid-December and follow-up rehabilitation; (3) a close family member passed away (apparently around the same time); and (4) counsel is responsible for a large number of cases. However, and while the Court appreciates counsel's injury and the death of a family member, these factors neglect to consider that the state prosecutor gave the federal prosecutor her blessing to proceed with federal charges on July 28, 2017 (id. at 7), and a second veteran federal prosecutor entered the case on April 17, 2017 (Doc. No. 166).  Further, and even apart from the home invasion count, the new charged date back to the time frame of the charges contained in the Superseding Indictment, yet the new charges were not presented to the grand jury in August, in September, in October, or in November 2017, or even in January 2018.

of trial, obviously to no avail. The question presented by Braden's Motion, however, is whether the Government's action in seeking the Third Superseding Indictment warrants dismissal on the grounds of prosecutorial vindictiveness.

"A showing of vindictive prosecution requires (1) an exercise of a protected right; (2) a prosecutorial stake in the exercise of that right; (3) unreasonableness of the prosecutor's conduct; and (4) the intent to punish the defendant for exercise of the protected right." United States v. Meda, 812 F.3d 502, 510 (6th Cir. 2015). "Presumably, if the first three elements are present, this may help establish grounds to believe the fourth is present, that there is the required 'realistic likelihood of vindictiveness,' which the government would have to rebut." United States v. Suarez, 263 F.3d 468, 479 (6th Cir.2001) (citing Bragan v. Poindexter, 249 F.3d 476, 481–82 (6th Cir.2001)).

Vindictiveness may be shown through "'objective evidence that a prosecutor acted in order to punish the defendant for standing on his legal rights.'" United States v. Young, 847 F.3d 328, 361–62 (6th Cir. 2017) (citation omitted). Alternatively, it may be established "by present[ing] sufficient evidence to create a 'presumption of vindictiveness' by examining the 'realistic likelihood of vindictiveness' and focusing on the prosecutor's 'stake' in deterring the exercise of a protected right and the unreasonableness of his actions." Id. at 362 (quoting United States v. Zolicoffer, 570 F. App'x 540, 543 (6th Cir. 2014)).

Braden points to no objective evidence of prosecutorial misconduct. Rather he relies on the presumption that there was vindictiveness in the return or the additional charges shortly before trial. In this vein, he argues:

> Braden's and other defendant's successful partial granting of the motions to sever placed a great burden on the Government by having to try two cases instead of one. There is no new revelation or discovery to support the government's delayed shift to add the additional charges. At any point in this case, the government could have

charged him with these charges and those not to only after plea bargaining was unsuccessful and defendant's pretrial motions were successful and then did so with an extreme delay even after the Court's admonition that the trial date would be firm and no continuances would be granted to the defense unless extreme situations arose.

There is little reason to suspect that the prosecutor's view of Braden's case changed significantly between the two indictments, given that the government already possessed all of the relevant evidence that supported the third superseding indictment well before procuring the indictment. . . . [T]he only substantive occurrence between the two indictment was Braden acting based on his pretrial rights to proceed to trial and reject a plea offer and to file for a motion to sever from the other defendant which was granted in part, thereby forcing the United States to try two trials, instead of one on the second superseding indictment. The government has never suggested that any other development altered its perception of the case for over a year that it was pending, so there is nothing to indicate that the superseding indictment compensated for unexpected changes or an incomplete initial grasp of the pertinent issues or facts.

((Doc. No. 491 at 5-6).

The suggestion that the Government achieved some tactical advantage because a severance had been granted goes nowhere. With the return of the Third Superseding Indictment, the Government still faces two trials – one against all Defendants, and the other involving the counts lodged solely against Johnson, just as it did before.[5]

Further, the fact that the Third Superseding Indictment followed this Court's granting of a motion to sever does not suggest vindictiveness. "[T]he likelihood that a defendant's exercise of his rights will spur a vindictive prosecutorial response is indexed to the burden that the defendant's conduct has placed on the prosecution." United States v. LaDeau, 734 F.3d 561, 569 (6th Cir. 2013). "When the prosecution 'is forced to do over what it thought it had already done correctly,'" or where "'duplicative expenditures of prosecutorial resources' are required . . . the prosecution's

---

[5] It also faces the prospect of a third trial if the new counts are severed. That is the subject of a Motions filed by filed by Haji-Mohamed, Brandon, and Braden, and discussed below.

9

stake in discouraging the defendant's exercise of a right may be 'considerable.'" Id. at 569-70 (internal citations omitted). That was not the case here.

The motions to sever (and the numerous other motions that were filed) are "not particularly exceptional"; "a defendant before trial is expected to invoke procedural rights that inevitably impose some 'burden' on the prosecutor." Suarez, 263 F.3d at 479 (quoting United States v. Goodwin, 457 U.S. 368, 381 (1982). "It is unrealistic to assume that a prosecutor's probable response to such motions is to seek to penalize and to deter." Id. at 480; compare, United States v. Rosse, 2017 WL 5625719 (6th Cir. Nov. 22, 2017) (prosecutor had "no stake in the outcome" where defendant's "motions were merely garden-variety pretrial motions") with LaDeau, 734 F.3d at 569 (finding government had "stake" and subsequent charges were vindictive where defendant successfully moved to suppress "crucial evidence," thereby "eviscerat[ing] the government's . . . case," and "forc[ing] the government to restart its prosecution from square one").

The fact that new charges were added after plea offers were rejected also does not create a presumption of vindictiveness. "To punish a person because he has done what the law plainly allows him to do is a due process violation 'of the most basic sort,'" United States v. Goodwin, 457 U.S. 368, 372 (1982) (citation omitted), including exercising the constitutional right to trial. However, the "Due Process Clause is not offended by all possibilities of increased punishment," United States v. Poole, 407 F.3d 767, 774 (6th Cir.2005) (quoting Blackledge v. Perry, 417 U.S. 21, 27 (1974)), and "if the charges are brought simply as the result of failure of the plea bargaining process, they are not vindictive," Suarez, 263 F.3d at479. As the Sixth Circuit has explained:

> [T]he Supreme Court long ago adopted the position that the prosecution may legitimately threaten to bring harsher charges in order to induce a defendant into pleading guilty, despite the fact that the harsher charges, if brought, might appear to penalize a defendant for exercising his right to trial. Bordenkircher v. Hayes, 434

U.S. 357, 363–65, 98 S.Ct. 663, 54 L.Ed.2d 604 (1978). Because plea bargaining offers a "mutuality of advantage to defendants and prosecutors," . . . and because the prosecution's ability to threaten a reluctant defendant with heightened charges is a necessary feature of a robust plea bargaining process, increased charges resulting from a breakdown of the plea bargaining process are not deemed vindictive, regardless of the fact that the prosecutor's goal is "to persuade the defendant to forgo his constitutional right to stand trial."

LaDeau, 734 F.3d at 569; see also, United States v. Gravley, 587 F. App'x 899, 918–19 (6th Cir. 2014) (stating that "so long as the Government engages a defendant in 'the give-and-take' compromise though which he can negotiate a benefit, it does not violate the defendant's constitutional rights" by bringing additional charges after plea negotiations fail).

Braden's "Motion to Dismiss Third Superseding Indictment" (Doc. No. 491) is **DENIED**.

**V. Brandon's Motion to Reveal Conspirator's Statements (Doc. No. 492)**

This is a two-fold request. First, Brandon asks that the Government be required to reveal any witness statements that it intends to use at trial. This request is subject to denial because the Jencks Act only requires that the government produce a witness statement after that witness has testified on direct examination. 18 U.S.C. § 3500(a); see United States v. Fletcher, 295 F. App'x 749, 754 (6th Cir. 2008) (observing that "the rule in this circuit . . . is clear" and that when "material sought by a defendant is covered by the Jencks Act . . . the terms of that Act govern the timing of the government's disclosure"); United States v. Musick, 291 F. App'x 706, 727 (6th Cir. 2008) (stating that Jencks Act material cannot be compelled). Nevertheless, and subject to an Agreed Protective Order (Doc. No. 424-1) that the Court will enter, the Government has indicated that it "is agreeable to produce the witnesses statements in advance of the witnesses testifying before trial," (Doc. No. 523 at 6), rendering this portion of Brandon's Motion moot.

Second, Brandon requests that the Court hold a hearing outside of the presence of the jury

to determine the admissibility of any co-conspirators' statements. The Court will deny that request.

"To admit statements of a co-conspirator under Rule 801(d)(2)(E), a trial court must find that: (1) the conspiracy existed; (2) the defendant was a member of the conspiracy; and (3) the co-conspirator made the proffered statements in furtherance of the conspiracy." United States v. Warman, 578 F.3d 320, 335 (6th Cir. 2009) (citing United States v. Wilson, 168 F.3d 916, 920 (6th Cir. 1999)). Often referred to as Enright findings, factors, or requirements, after United States v. Enright, 579 F.2d 980 (6th Cir. 1978), "[w]hether the offering party has met this burden is a preliminary question of fact for the trial judge[.]" United States v. Kone, 307 F.3d 430, 442 (6th Cir. 2002).

The Sixth Circuit has identified three approaches that may be used to determine the admissibility of co-conspirator's statements. "One acceptable method is the so-called 'mini-hearing' in which the court, without a jury, hears the government's proof of conspiracy and makes the preliminary Enright finding." United States v. Vinson, 606 F.2d 149, 152 (6th Cir. 1979). "The judge may also require the government to meet its initial burden by producing the non-hearsay evidence of conspiracy first prior to making the Enright finding concerning the hearsay's admissibility." Id. Finally, a court may "admit the hearsay statements subject to later demonstration of their admissibility by a preponderance of the evidence." Id. at 153. Each approach has certain advantages and disadvantages, and the trial judge has "considerable discretion" in determining which approach to use. United States v. Lamar, 466 F. App'x 495, 498 (6th Cir. 2012); Vinson, 606 F.2d at 153.

In the past, this Court has followed the third approach by conditionally admitting the statements, subject to the Government establishing the conspiracy by the close of its case-in-chief.

See United States v. Chatman, No. 3:16-cr-208, Doc. No. 50 at 1 (M.D. Tenn. May 19, 2017) (denying motion to suppress co-conspirator's statement "conditioned upon the Government establishing by a preponderance of the evidence at trial that a conspiracy existed that Defendant was a participant in the conspiracy, and that the statements introduced were made in the course of and in furtherance of the conspiracy"). This is the approach commonly used by other judges in this district as well. See e.g., United States v. LaDeau, No. 3:10-00242, 2015 WL 736910, at *3 (M.D. Tenn. Feb. 19, 2015) (Sharp, J.) (denying "Motion to Exclude Statements of Co-Defendants" and conditionally admitting statements); United States v. Smith, No. 3:11-00194, 2012 WL 2357437, at *2 (M.D. Tenn. June 20, 2012) (Campbell, J.) (denying "Motion for Jury-Out Enright hearing," following "the procedure used by the district court" in Vinson, and admitting "the hearsay statements subject to later demonstration of their admissibility by a preponderance of the evidence"); United States v. Allen, No. 3:10-00163, Doc. No. 1029 at 1 (M.D. Tenn. Nov. 29, 2011) (Trauger, J.) (stating that, "[i]n the interest of judicial economy, this court elects to admit co-conspirator statements subject to later demonstration of their admissibility by a preponderance of the evidence").

Brandon argues that the conditional admittance approach would "not be prudent in this case" because "the Government intends to put on proof at trial as to a hodge podge of different acts, including at least three separate conspiracies." (Doc. No. 492 at 2). However, and as a matter of judicial economy, the fact that the Government is alleging multiple conspiracies actual favors conditional admittance because, otherwise, the Court is potentially faced with three out-of-jury hearings that likely would involve a great deal of time. Further, because of the potential for a mistrial, Vinson, 606 F.2d at 153, the Government has a strong interest is making sure that its proof will establish the existence of a conspiracy and defendant's involvement in that conspiracy so as to

warrant admissibility of the co-conspirators statement

Brandon's Motion to Reveal Conspirator's Statements (Doc. No. 492) is **DENIED**.

### VI. Brandon's "Motion in Limine No. 3" (Doc. No. 495)

In one of the rulings issued on June 7, 2017 (Doc. No.366), the Court denied Brandon's Motion in Limine (Doc. No. 198) to preclude proof of gang membership. The Court did so because the Government represented that the proof at trial would show that (1) Brandon and Bradford were members of the Five Deuce Hoover Crips; (2) Haji-Mohamed was a member of the Bloods, and (3) those affiliations factored into some of the crimes charged. Brandon now seeks to limit that ruling by requesting that the Government "be precluded from referencing any supposed gang affiliation related to Mr. Brandon, including in its opening statement, until such time that credible proof is presented to the jury that establishes said fact." (Doc. No. 495 at 1-2). He contends that discussion about gang membership prior to proof "would be unduly prejudicial." (Id. at 2).

Insofar as Brandon wants to preclude the jury from hearing anything about potential gang membership until the evidence begins, that presents two problems. First, this Court typically reads the Indictment to the jury venire so that the prospective jurors understand what the case is about, and can express any concerns they may have about sitting on the jury given the nature of the allegations. In at least two counts of the Second Superseding Indictment (Counts Fourteen and Fifteen), and at least five counts of the Third Superseding Indictment (Counts Twenty-Two through Twenty-Six), Brandon is identified as a member of the Five Deuce Hoover Crips.

Second, even if the references to gang affiliation are omitted when the venire is read the Indictment, "a criminal defendant is guaranteed the right to an impartial and unbiased jury." Holder v. Palmer, 588 F.3d 328, 338 (6th Cir. 2009) (citing Morgan v. Illinois, 504 U.S. 719, 727 (1992)).

"[T]he obligation to impanel an impartial jury lies in the first instance with the trial judge," and it is his or her "responsibility to remove prospective jurors who will not be able impartially to follow the court's instructions and evaluate the evidence." Rosales-Lopez v. United States, 451 U.S. 182, 189 (1981).

"Gangs generally arouse negative connotations and often invoke images of criminal activity and deviant behavior." United States v. Irvin, 87 F.3d 860, 865 (7th Cir. 1996). "There is therefore always the possibility that a jury will attach a propensity for committing crimes to defendants who are affiliated with gangs or that a jury's negative feelings toward gangs will influence its verdict." Id. Given that propensity, the Court is of the view that jurors should be questioned as to their view of gangs during the selection process, so as to uncover potential bias against Defendants in this case. The Court intends to make a limited inquiry into the potential juror's view of gangs, unless the parties can convince the Court otherwise.

As for opening statements, their purpose is to state what evidence will be presented, to make it easier for the jurors to understand what is to follow, and to relate parts of the evidence and testimony to the whole. United States v. Dinitz, 424 U.S. 600, 612 (1976) (Burger, C.J., concurring); United States v. Yakobowicz, 427 F.3d 144, 150 (2d Cir. 2005). Limitations on opening statements are a matter of discretion for the trial court, United States v. Burns, 298 F.3d 523, 543 (6th Cir. 2002), and a "[t]rial court has broad discretion in controlling the direction of opening statements," United States v. Conrad, 320 F.3d 851, 855 (8th Cir. 2003).

Because the Court has already ruled that the Government can introduce evidence about gang membership, and because the Court intends to conduct a limited inquiry into juror's view about

gangs during voir dire, the Court will permit the Government to mention *alleged* gang membership during opening statements. The Court fully expects, however, that any reference to alleged gang membership in opening statements will be kept to the barest minimum. The Court will discuss the parameters of any such arguments with the parties, either at the pretrial conference or before opening statements begin.

Brandon's "Motion in Limine No. 3" (Doc. No. 495) to preclude any reference to gang membership during opening statements is **DENIED**.

## VII. Brandon's "Second Motion to Strike" (Doc. No. 497)

In another ruling issued June 7, 2017 (Doc. No. 368), the Court granted Brandon's Motion to Strike (Doc. No. 196) "with respect to the allegations surrounding the murder of Isaiah Starks." (Doc. No. 368 at 1). Accordingly, the phrase, "which [2] AWEIS HAJI-MOHAMED a/k/a SON SON, aided and abetted by [l] REGINALD JOHNSON, III, a/k/a CHEEFA, and [3]MARQUIS BRANDON a/k/a DUMMY, used to shoot and kill Isaiah Starks a/k/a Blue on or about February 9, 2015" was ordered stricken from Count Thirteen. (Id.).

Nevertheless, and while the Third Superseding Indictment eliminated the allegation a pistol was used to kill Starks, it retained the language about the gun being used to shoot Starks in Count Seventeen. That Count reads:

COUNT SEVENTEEN

THE GRAND JURY FURTHER CHARGES:

Between on or about January 22, 2015, and on or about September 11, 2015, in the Middle District of Tennessee, [1] REGINALD JOHNSON, III, a/k/a CHEEFA, [2] AWEIS HAJI-MOHAMED a/k/a SON SON, and [3]MARQUIS BRANDON a/k/a DUMMY each having previously been convicted in any court of a crime punishable by imprisonment for a term exceeding one year, did knowingly possess, in and affecting commerce, a firearm, to wit: a Springfield XD, .40 caliber semi-automatic

pistol, which [2] AWEIS HAJI-MOHAMED a/k/a SON SON, aided and abetted by [1] REGINALD JOHNSON, III, a/k/a CHEEFA, and [3]MARQUIS BRANDON a/k/a DUMMY, used to shoot Isaiah Starks a/k/a Blue on or about February 9, 2015, and which [1] REGINALD JOHNSON, III, a/k/a CHEEFA, and [3] MARQUIS BRANDON a/k/a DUMMY used around the end of February 2015 to regain possession of a Glock, Model 23, .40 caliber semi-automatic pistol that [1] REGINALD JOHNSON, III, a/k/a CHEEFA had previously sold to another person.

In violation of Title 18, United States Code, Sections 922(g)(1), 924, and 2.

(Doc. No. 481 at 9-10).

The inclusion of "used to shoot Isaiah Starks a/k/a Blue on or about February 9, 2015" contravenes this Court's Order. In a Memorandum Opinion accompanying the June 7, 2017 Order, the Court observed that, while the charges in "the Second Superseding Indictment are wide-ranging" and encompass crimes ranging from gun possession, to drug distribution, to Hobbs Act robberies," . . . "[t]hrowing an uncharged murder into the mix . . . adds a whole new level of prejudice, which can only serve to inflame the passions and/or prejudices of the jury." (Doc No. 367 at 6). Therefore, the Court stated that would "redact the language referencing the Starks' murder from Count Thirteen of the Superseding Indictment," and that the "Motion to Strike will be granted solely with respect to the allegation[s] surrounding the murder of Isaiah Starks." (Id. at 9).

 Part-and-parcel of the allegations surrounding the murder of Starks was that he was shot by Hajid-Mohamed. In fact, the Court prefaced its discussion of the applicable law by observing that its "only real concern is with the allegation in Count Thirteen that the Springfield XD, .40 caliber semiautomatic pistol was used *to shoot and kill* Isaiah Starks on February 9, 2015." (Id. at 4) (emphasis added). To reduce that concern and lessen potential prejudice, the Court entered the Order that specifically stated that the references to the firearm being used "used to shoot and kill Isaiah Starks" would be stricken. That ruling. however, "d[id] not preclude the Government from

presenting eyewitness testimony that Haji-Mohamed fired the weapon," (Doc. No. 366 at 2), or that others were present when he did so.[6]

Accordingly, Brandon's "Second Motion to Strike" (Doc. No. 497) is **GRANTED** and the Count relating to the shooting and killing of Isaiah Starks is **REDACTED** as set forth in this Court's July 7, 2017 Order (Doc. No. 368). While the Court stands by its ruling relating to what language will be retained in the Indictment, the Government, in its Response to Brandon's Motion (Doc. No. 529), raises a number of arguments as to the allowable scope of proof at trial in relation to the incident involving the shooting and killing of Starks. The Court will consider arguments on that issue at the pretrial conference, or at some other point prior to the start of trial.

### VIII. Haji-Mohamed's Motion to Continue Trial or in the Alternative Sever Counts Eighteen, Nineteen, Twenty and Twenty-One of the Third Superseding Indictment(Doc. No. 508); Braden's "Motion to Sever Count 32 and Count 33 From Third Superseding Indictment (Doc. No. 510); Brandon's "Motion to Proceed to Trial on the Second Superseding Indictment (Doc. No. 511)

Although going about it in various ways, each of these Motions is directed at severing one or more of the Counts in the Third Superseding Indictment from those contained in the Second Superseding Indictment. Braden moves to dismiss Count 32 and 33, which added the home invasion charge (Count 32) and another charge of using a firearm during the commission of a crime of violence (Count 33). He argues that those counts "add a tremendous sentencing exposure to [his] already pending counts," and claims "it would be impossible to think Braden could receive a fair trial on wholly unrelated charges like home invasion when he is charged in a conspiracy to commit

---

[6] While operability may not be an element of Section 924, <u>United States v. Alkufi</u>, 636 F. App'x 323, 329 (6th Cir.) (collecting cases), the fact that the pistol was fired may go to the issue of whether it was "designed to" or could readily be "converted to expel a projectile by the action of an explosive," 18 U.S.C. § 921(a)(3)(A), so as to constitute a firearm.

a robbery with two codefendants where the evidence against those codefedants far far [sic] outweighs the direct evidence the government will present against Braden in those charges." (Doc. No. 510 at 3). He also complains about the potential "spillover effect" in that "[t]here is a danger that on these two counts the jury will convict on the basis of the cumulative evidence of the other conspiracies and firearm charges rather than on the basis of the evidence relating to Braden on these specific counts relating to just him." (Id.).

Haji-Mohamed notes that the Third Superseding Indictment adds four additional counts against him, including two felon in possession charges (Counts 20 and 21), and stealing (Count 18) and possessing a stolen firearm (Count 19) charges. He acknowledges that these counts "do not significantly imperil [him] any greater than the Second Superseding Indictment," but notes other defendants face "counts involving serious consecutive time," that "leave[s] them with choosing between two unwanted choice of delay or being unprepared." (Doc. No. 508 at 2). He requests either a severance of the new counts or a continuance of the trial, and "imagines if the Court severed the new counts or proceeded to trial on the Second Superseding Indictment here will be less untimely superseding indictments in the future." (Id. at 2).

As for Brandon, he concedes that the Government informed him it would be seeking additional charges prior to the September 1, 2017 deadline imposed by the Court, and that those potential charges were discussed in detail. He notes, however, that "[t]he Third Superseding Indictment contains eight (8) charges against [him] that were not found in the previous indictment, including two (2) additional Hobbs Act robberies and corresponding violations of 18 U.S.C. § 924(c)." (Doc. No. 511 at 2). With the filing of those charges, Brandon's "maximum punishment increased dramatically," and he is now "essentially facing a life sentence." (Id.). He objects to a

continuance and argues that proceeding to trial on the new charges on April 2, 2018 would violate 18 U.S.C. § 3161.

Brandon is correct that the Speedy Trial Act provides that "the trial shall not commence less than thirty days from the date on which the defendant first appears through counsel," 18 U.S.C. § 3161(c)(2), and that thirty days will not have run from the time Defendants were arraigned on the newest Indictment and the April 2, 2018 trial date. In similar fashion, the Government asserts that, because the Defendants "were not arraigned on the Third Superseding Indictment until March 12, 2018, . . . the trial should be continued to April 12, 2018, or soon thereafter to ensure the defendants' [sic] have the statutory 30-day period" under 18 U.S.C. § 3161(c)(2). (Doc. No. 526 at 2).

Notwithstanding Brandon's and the Government's position, the Supreme Court has held that, "[g]iven the unambiguous language" of 18 U.S.C. § 3161(c)(2), "Congress did not intend that the 30-day trial preparation period begin to run from the date of filing of a superseding indictment." United States v. Rojas-Contreras, 474 U.S. 231, 234 (1985). "Thus, a defendant is not automatically entitled to a thirty-day continuance upon the filing of a superseding indictment." United States v. Prince, 214 F.3d 740, 763 (6th Cir. 2000); see also, United States v. Stringer, 730 F.3d 120, 128 n.4 (2d Cir. 2013) (noting that the Supreme Court in Rojas-Conteras rejected the argument "that the filing of a superseding indictment triggered a requirement of a 30–day delay prior to trial under the Speedy Trial Act"); United States v. Hale, 685 F.3d 522, 537 (5th Cir. 2012) (stating that "the automatic 30–day preparation period does not apply to superseding indictments").

Nevertheless, "the district court has the authority, under 18 U.S.C. § 3161(h)(8), to grant a continuance if the 'ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial.'" Id. A district court also has the authority to order

separate trials under Rule 14 of the Federal Rules of Criminal Procedure "[i]f the joinder of offenses

. . . appears to prejudice a defendant or the government[.]" Fed. R. Crim. P. 14(a).

In the context of the earlier filed Motions to Sever, this Court discussed the interplay

between Rule 8 relating to joinder, and Rule 14 relating to severance. As the Government correctly

points out, the Court noted that Defendants indicted together normally should be tried together, and

that:

> Collectively, Defendants are asking the Court to hold at least five separate trials –
> each trial limited to the specific charge against a particular Defendant for the obvious
> reason that their chances of favorable verdicts are likely higher if they are tried
> separately. "But it is 'well settled that defendants are not entitled to severance
> merely because they may have a better chance of acquittal in separate trials.'"
> United States v. Fields, 763 F.3d 443, 457 (6th Cir. 2014) (quoting Zafiro v. United
> States, 506 U.S. 534, 539 (1993)). Moreover, slicing the case into as many pieces
> as Defendants want would be an enormous waste of resources and run afoul of the
> very reasons that joint trials are preferred. See United States v. Caver, 470 F.3d 220,
> 238 (6th Cir. 2006) (stating that "[s]eparate trials produce additional labor for judges
> and juries, which results from the unnecessary repetition of evidence and trial
> procedures" ).

(Doc. No. 370 at 9).

The prospects of three trials is hardly more palatable than five trials. The addition of another

trial to the two already scheduled will result in additional labor costs and wasted resources for all

concerned, including the Court. However, Brandon's and Haji-Mohamed's Motions are not based

on the theory they will have a better chance of acquittal if they are tried separately, nor can it be said

that there will be an *unnecessary* repetition of evidence. Any repetition or overlap is necessary

precisely because the Government chose to wait a little more than a month before trial to add eight

new counts that significantly increases all Defendants' exposure. The Government chose to do so,

even though it was specifically warned on July 17, 2017, that it should promptly seek any new

charges.

"The law is clear that the government has the ability to supersede an indictment at any point before trial," including "on the eve of trial." Thomas v. United States, No. 1:11-CV-0038, 2011 WL 6754061, at *10 (M.D. Tenn. Dec. 23, 2011). Indeed, practical considerations and the public interest counsel against a rule that would require prosecutors to file "every conceivable charge against an individual on the public record from the outset." United States v. Goodwin, 457 U.S. 368, 382 n.12 (1982). This does not mean, however, that the Government's choice to delay seeking an indictment is necessarily without cost.

"The Supreme Court has recognized, district courts are busy and need the freedom to manage their dockets and schedules." United States v. Walden, 625 F.3d 961, 966 (6th Cir. 2010) (citing Morris v. Slappy, 461 U.S. 1, 11–12 (1983)). Unquestionably, matters of docket control are within the broad discretion of the district court. United States v. Washington, 869 F.3d 193, 220 (3d Cir. 2017); United States v. Rodebaugh, 798 F.3d 1281, 1294 (10th Cir. 2015); ACLU v. McCreary, Cty., 607 F.3d 439, 451 (6th Cir. 2009).

The trials in this case were set after consultation with counsel, and the trial dates were agreed to by all. This itself was no small feat given the number of lawyers involved, and the fact that the Government estimated the case would take a month and a half to try. Based upon that agreement, the Court cleared its calendar for six weeks (except for Fridays) to devote to this case. At least if the charges contained in the Second Superseding Indictment are tried during this period, the majority of the charges will be resolved one way or another, and the Court will not have lost two-dozen trial days that could have been devoted to hearing other cases. This approach will help to insure the Court's ability to control its own calendar and will not prejudice Defendants by forcing them to go to trial on new charges returned just a month before trial. See Linton v. Perini, 656 F.2d 207, 209

(6th Cir. 1981) (noting that a trial court can "tightly control its own docket" so long as it does not interfere with a defendant's Sixth Amendment rights); United States v. Cutting, No. 14-CR-00139-SI-1, 2017 WL 66837, at *12 (N.D. Cal. Jan. 6, 2017) (dismissing without prejudice new charges and requiring government to go to trial on the charges contained in the original indictment where superseding indictment was returned "just a few months before trial" that "significantly expand[ed] the scope of an already complex case")[7].

Furthermore, and as Brandon points out, "[h]e should not be forced to sacrifice his right to due process or his right to a speedy trial because the Government failed to promptly seek new charges from the grand jury." (Doc. No. 511 at 3). Each of the Defendants have been waiting long enough for their day in court on the Second Superseding Indictment: Johnson has been detained since August of 2015; Brandon has been detained since April 2016; and Braden and Haji-Mohamed have been detained since September 2016. Accordingly, the Court will sever the Counts in the Third Superseding Indictment, and proceed to trial on April 2, 2018 on the charges contained in the Second Superseding Indictment.

One final point merits discussion. In his Motion, Haji-Mohamed claims he is "being rushed to trial," and that he "would prefer a continuance so that Mr. Cooper could act as the lead attorney." (Doc. No. 508 at 1). However, at the March 5, 2018 status conference, Haji-Mohamed stated that he was prepared to go to trial on April 2, 2018, with Mr. Komisar serving as lead counsel and Mr. Cooper assisting, so long as the charges were limited to those contained in the Second Superseding

---

[7] Unlike Cutting, this case is not document intensive. Nevertheless, the allocation of Court time was based upon the representations made regarding how long it would take to try the charges contained in the Second Superseding Indictment. The return of the Third Superseding Indictment on February 28, 2018 came too late to allow the Court to adjust the schedule in order to account for the addition of eight new charges that undoubtedly require additional proof and more trial time.

Indictment.  The Court will hold Haji-Mohamed to the representations that he made in open court and on the record.

Moreover, Haji-Mohamed is not being "rushed to trial."  Quite the contrary, the trial has been scheduled for more than seven months.  At the time it was scheduled, Haji-Mohamed was represented by Mr. Komisar, who represents him to this day.  True,  Robert E. McGuire was added as counsel on November 20, 2017, so that he could he could cross-examine a particular witness,  but Mr. McGuire was relieved of his representation after he applied for, and received, a position as an Assistant United States Attorney.[8]  With the departure of Mr. McGuire,[9] the Court appointed Mr. Cooper, who is now the fourth lawyer assigned to represent Haji-Mohamed.[10]

As it now stands, Haji-Mohammed is being represented by two-court appointed lawyers, one of whom has been his lawyer since shortly after he was arrested.  Haji-Mohamed is in more than capable hands, as both lawyers have extensive federal criminal trial experience.  While Haji-Mohamed might prefer to have Mr. Cooper pull the laboring oar, a "'defendant relying on court-appointed counsel has no constitutional right to the counsel of his choice.'"  United States v. Powell, 847 F.3d 760, 780 n. 12 (6th Cir. 2017) (quoting Daniels v. Lafler, 501 F.3d 735, 740 (6th Cir. 2007)).

---

[8]  When the Court learned at the status conference on February 13, 2018 that Mr. McGuire had applied for a position with the United States Attorney's office, it instructed the Government's lawyers to inform their superiors that taking any further action on the application would be ill-advised given the looming trial date.  For whatever reason, the United States Attorney sadly chose to go ahead with the appointment shortly thereafter.

[9]  All totaled, McGuire represented Haji-Mohamed for approximately three months.

[10]  Initially, Haji-Mohamed was represented by Jack L. Byrd, but Mr. Byrd was allowed to withdraw approximately one month later, after it was discovered that he had a conflict.  He was replaced by Mr. Komisar on October 21, 2016.

Accordingly, Haji-Mohamed's Motion to Continue Trial or in the Alternative Sever Counts Eighteen, Nineteen, Twenty and Twenty-One of the Third Superseding Indictment (Doc. No. 508), Braden's "Motion to Sever Count 32 and Count 33 From Third Superseding Indictment (Doc. No. 510), and Brandon's "Motion to Proceed to Trial on the Second Superseding Indictment (Doc. No. 511) are **GRANTED** to the extent they seek to sever the charges contained in the Third Superseding Indictment. This case will proceed to trial on April 2, 2018, based upon the charges contained in the Second Superseding Indictment.

IT IS SO ORDERED.

_____

WAVERLY D. CRENSHAW, JR.
CHIEF UNITED STATES DISTRICT JUDGE